DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Lawrence County Common Pleas Court judgment of conviction and sentence. The jury found Isaiah C. Sudderth, defendant below and appellant herein, guilty of murder with a firearm specification, in violation of R.C. 2903.02(A) and R.C. 2941.145. *Page 2 
 {¶ 2} Appellant raises the following assignments of error for review:
 FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT'S FAILURE TO INSTRUCT THE JURY ON A VOLUNTARY MANSLAUGHTER CHARGE VIOLATED APPELLANT'S RIGHT TO A FAIR TRIAL AND DUE PROCESS UNDER THE OHIO AND FEDERAL CONSTITUTIONS AS WELL AS OHIO CRIMINAL RULES."
 SECOND ASSIGNMENT OF ERROR:
 "WHEN COUNSEL'S PERFORMANCE IS DEFICIENT IN THE CONDUCT OF TRIAL COUPLED WITH PREJUDICE INURING TO THE DETRIMENT OF THE APPELLANT THEN HIS RIGHT TO A FAIR TRIAL AND THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL ARE VIOLATED CONTRA THE OHIO AND FEDERAL CONSTITUTIONS."
 THIRD ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE APPELLANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN A CONVICTION AND WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 3} On June 17, 2007, several individuals celebrated Father's Day and drank alcoholic beverages at the American Legion. Later that evening, two of the individuals, Kristen Snyder and Kim Salmons argued over the telephone. Snyder, her cousin (Damon Pringle) and some friends (Michelle Lewis, Ian Edens, and Jamar Boykin) then walked to Salmons' apartment, apparently to continue the argument. After entering Salmons' kitchen, Snyder and Salmons began to argue. Appellant, Salmons' boyfriend, apparently said something to Snyder to anger Pringle. Pringle then began punching appellant's face. After five to six minutes, Pringle stopped hitting appellant. Appellant then told Damon "he was cool and he just wanted to use the bathroom." Instead of using the bathroom, appellant went upstairs, retrieved a gun, and returned to the *Page 3 
kitchen where he shot Pringle. Pringle died from the gunshot wounds.
 {¶ 4} The Lawrence County Grand Jury returned an indictment charging appellant with murder with a firearm specification. At trial, the evidence showed that Pringle was shot four times — once in the chest and four times in the back. The individuals present in Salmons' apartment all testified that the fight between Pringle and appellant had ended when appellant went upstairs. None of them heard Pringle threaten appellant, brandish any type of weapon, or make an aggressive move toward appellant once appellant returned with the gun.
 {¶ 5} Appellant, however, testified that Pringle threatened him. Appellant claimed that Pringle stated that he would kill him, stab him, and cut his throat. Appellant explained that after Pringle stopped hitting him, he was sitting, trying to be "cool." He told Pringle he needed to use the bathroom. Appellant went upstairs and grabbed a gun. As he came downstairs, Pringle lunged at him. After that, things happened quickly — "it was like pow, pow, pow, pow, pow, real quick shots." Appellant stated that when he shot Pringle, he did not feel the threat had ended.
 {¶ 6} After the parties presented their evidence, the trial court noted that there had been some discussion regarding a lesser included charge for manslaughter. In response, defense counsel stated:
 "[Appellant] indicated to me repeatedly that he does not want any lesser includ[ed] voluntary manslaughter instruction. He wants the jury to come back with murder or not guilty. That's correct, isn't it Isaiah?
 [Appellant]: Yes sir.
 [Counsel]: And we have talked about that repea[t]edly.
 [Appellant]: Yes we did.
 [Counsel]: And you are asking me to ask the court not put instruction in for voluntary manslaughter? *Page 4 
 [Appellant]: Exactly, yes.
 [Counsel]: Just guilty or not guilty on what he is [i]ndicted for. Which is the murder charge."
 {¶ 7} The jury found appellant guilty of murder with a firearm specification. The trial court sentenced appellant to serve three years in prison on the firearm specification and fifteen years to life on the murder conviction. This appeal followed.
 I {¶ 8} In his first assignment of error, appellant asserts that the trial court erred by failing to instruct the jury on voluntary manslaughter. Appellant recognizes that he specifically decided against a voluntary manslaughter instruction, but appears to argue that the trial court had an independent duty to give the instruction because his "self-defense argument was speculative at best."
 {¶ 9} Initially, we note that appellant invited any error with respect to the court's failure to give a voluntary manslaughter instruction. The invited error doctrine provides that a party may not "take advantage of an error which he himself invited or induced." Hal Artz Lincoln-Mercury,Inc. v. Ford Motor Co. (1986), 28 Ohio St.3d 20, 502 N.E.2d 590, paragraph one of the syllabus; see, also, State v. Davis116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, at ¶ 53; State ex rel. V. Cos. v.Marshall (1998), 81 Ohio St.3d 467, 471, 692 N.E.2d 198. Here, appellant explicitly decided to forego a voluntary manslaughter instruction so that the jury's choice was to convict him of murder or to find him not guilty. Under these circumstances, he invited any error, and we could overrule his first assignment of error on this basis alone. Nonetheless, in the interests of justice we will review the merits of his assignment of error. *Page 5 
 {¶ 10} Generally, a trial court has broad discretion to decide how to fashion jury instructions. The trial court must not, however, fail to "fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." State v. Comen (1990), 50 Ohio St.3d 206,553 N.E.2d 640, paragraph two of the syllabus. Additionally, a trial court may not omit a requested instruction, if such instruction is "`a correct, pertinent statement of the law and [is] appropriate to the facts * * *.'" State v. Lessin (1993), 67 Ohio St.3d 487, 493,620 N.E.2d 72 (quoting State v. Nelson (1973), 36 Ohio St.2d 79,303 N.E.2d 865, paragraph one of the syllabus).
 {¶ 11} In determining whether to give a requested instruction, a trial court may inquire into the sufficiency of the evidence to support the requested instruction. See id. at 494. A trial court is vested with discretion to determine whether sufficient evidence was presented at trial to require a particular jury instruction. State v. Mitts (1998),81 Ohio St.3d 223, 228, 690 N.E.2d 522. If, however, the evidence does not warrant an instruction, or if an instruction is not appropriate in light of the crime charged, a trial court is not obligated to give the instruction. See Lessin, 67 Ohio St.3d at 494. Thus, in our review we must determine whether the trial court abused its discretion by finding that the evidence was insufficient to support the requested charge or that the requested instruction was not pertinent to the crime charged. See Mitts; State v. Wolons (1989), 44 Ohio St.3d 64, 541 N.E.2d 443, paragraph two of the syllabus; see, also, State v. Elijah (July 14, 2000), Montgomery App. No. 18034. Generally, an abuse of discretion may be found if the trial court's attitude was unreasonable, arbitrary or unconscionable. See, e.g., State v. Montgomery (1991),61 Ohio St.3d 410, 413, 575 N.E.2d 167. *Page 6 
 {¶ 12} Voluntary manslaughter is an inferior degree of murder. SeeState v. Shane (1992), 63 Ohio St.3d 630, 632, 590 N.E.2d 272. R.C. 2903.03(A) defines "voluntary manslaughter" and provides: "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another * * *." A defendant on trial for murder "is entitled to an instruction on voluntary manslaughter when the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter." Shane, 63 Ohio St.3d at 632.
 {¶ 13} Before a trial court gives a voluntary manslaughter instruction in a murder case, the court first must determine "whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction." State v. Elmore111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, at ¶ 81, citingShane, paragraph one of the syllabus. "In making that determination, trial courts must apply an objective standard: `For provocation to be reasonably sufficient, it must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control.'" Id., quoting Shane, 63 Ohio St.3d at 635. "If insufficient evidence of provocation is presented, so that no reasonable jury would decide that an actor was reasonably provoked by the victim, the trial judge must, as a matter of law, refuse to give a voluntary manslaughter instruction."Shane, 63 Ohio St.3d at 634.
 {¶ 14} Once the court finds that the evidence shows that the defendant was sufficiently provoked under the objective standard, the inquiry shifts to a subjective *Page 7 
standard: whether the defendant actually was under the influence of sudden passion or in a sudden fit of rage. See id. Ordinarily, "[w]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." State v. Mack (1998),82 Ohio St.3d 198, 201, 694 N.E.2d 1328. Furthermore, "past incidents or verbal threats do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off." Id. Additionally, "[e]vidence supporting the privilege of self-defense, i.e., that the defendant feared for his own and other's personal safety, does not constitute sudden passion or a fit of rage as contemplated by the voluntary manslaughter statute." State v. Harris (1998),129 Ohio App.3d 527, 535, 718 N.E.2d 488; see, also, State v. Perdue,153 Ohio App.3d 213, 792 N.E.2d 747, 2003-Ohio-3481, at ¶ 12. "While self-defense requires a showing of fear, voluntary manslaughter requires a showing of rage, with emotions of `anger, hatred, jealously, and/or furious resentment.'" State v. Levett, Hamilton App. No. C-040537,2006-Ohio-2222, at ¶ 29 (citations omitted). Thus, even when the victim had a gun, the offender is not entitled to a voluntary manslaughter instruction in the absence of evidence that he "was actually provoked into a sudden fit of rage or passion." Perdue, at ¶ 15.
 {¶ 15} In Elmore, the court concluded that a voluntary manslaughter conviction was not appropriate when the evidence failed to show that the defendant acted under the influence of sudden passion or in a sudden fit of rage. In Elmore, during an argument with the victim, the defendant went downstairs, picked up a lead pipe that he had brought into the house, went back upstairs, and hit the victim on the head with the pipe four to five times, killing her. The Elmore court determined that under these facts, "the trial court could rightly find that a voluntary-manslaughter instruction was not *Page 8 
warranted." See id. at ¶ 85, citing State v. Braden, 98 Ohio St.3d 354,2003-Ohio-1325, 785 N.E.2d 439, ¶ 70 (voluntary-manslaughter instruction not warranted when one victim was shot five times and the other victim was shot in the back of the head); State v. Carter (2000),89 Ohio St.3d 593, 602, 734 N.E.2d 345 (voluntary-manslaughter instruction not warranted where victim was stabbed 18 times).
 {¶ 16} In the case at bar, we believe that the evidence fails to show that appellant acted under a sudden passion or fit of rage sufficient to warrant a voluntary manslaughter instruction. All of the prosecution's witnesses stated that the victim had stopped hitting appellant and that appellant then sat down and requested to go upstairs, where he retrieved a gun. Under an objective standard, any threat had ended and appellant had sufficient time to "cool off" before returning with the gun and shooting the victim four times — once in the chest and three times in the back. Thus, even assuming the court possessed an independent duty to examine the evidence, the trial court could have concluded that the evidence adduced at trial did not support such an instruction.
 {¶ 17} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first assignment of error.
 II {¶ 18} In his second assignment of error, appellant asserts that trial counsel rendered ineffective assistance of counsel. He argues that trial counsel was ineffective for failing to object when Detective Bowman testified that appellant refused to answer any questions regarding a weapon and then invoked his right to counsel. Appellant additionally contends that counsel was ineffective for failing to request a voluntary manslaughter instruction. *Page 9 
 {¶ 19} Our analysis begins with the premise that criminal defendants have a right to counsel, including a right to the effective assistance from counsel. See McCann v. Richardson (1970), 397 U.S. 759, 770, 25 L.Ed.2d 763, 90 S.Ct. 1441; State v. Stout, Gallia App. No. 07CA5,2008-Ohio-1366. To establish constitutionally ineffective assistance of counsel, a defendant must show (1) his counsel's performance was deficient, and (2) such deficient performance prejudiced the defense and deprived him of a fair trial. See Strickland v. Washington (1984),466 U.S. 668, 687, 80 L.Ed .2d 674, 104 S.Ct. 2052; see, also, State v.Issa (2001), 93 Ohio St.3d 49, 67, 752 N.E.2d 904; State v. Goff (1998),82 Ohio St.3d 123, 139, 694 N.E.2d 916. "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation. To show prejudice, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." State v. Conway, 109 Ohio St.3d 412, 2006-Ohio-2815,848 N.E.2d 810, at ¶ 95 (citations omitted). "Failure to establish either element is fatal to the claim." State v. Jones, Scioto App. No. 06CA3116, 2008-Ohio-968, at ¶ 14. Therefore, if one element is dispositive, a court can need not analyze both. See State v.Madrigal (2000), 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other").
 {¶ 20} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. "A *Page 10 
properly licensed attorney is presumed to execute his duties in an ethical and competent manner." State v. Taylor, Washington App. No. 07CA11, 2008-Ohio-482, at ¶ 10, citing State v. Smith (1985),17 Ohio St.3d 98, 100, 477 N.E.2d 1128. Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the Sixth Amendment. See State v. Gondor, 112 Ohio St.3d 377,2006-Ohio-6679, 860 N.E.2d 77, at ¶ 62; State v. Hamblin (1988),37 Ohio St.3d 153, 156, 524 N.E.2d 476.
 {¶ 21} A decision regarding which defense to pursue at trial is a matter of trial strategy "`within the exclusive province of defense counsel to make after consultation with his client.'" State v.Murphy, 91 Ohio St.3d 516, 524, 2001-Ohio-0112, 747 N.E.2d 765, quotingLewis v. Alexander (C.A.6, 1993), 11 F.3d 1349, 1354.
 {¶ 22} To establish prejudice, a defendant must demonstrate that a reasonable probability exists that, but for counsel's errors, the result of the trial would have been different. See State v. White (1998),82 Ohio St.3d 16, 23, 693 N.E.2d 772; State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373, at paragraph three of the syllabus. Furthermore, courts may not simply assume the existence of prejudice, but require that prejudice be affirmatively demonstrated. See State v.Clark, Pike App. No. 02CA684, 2003-Ohio-1707, at ¶ 22; State v.Tucker (Apr. 2, 2002), Ross App. No. 01 CA2592; State v. Kuntz (Feb. 26, 1992), Ross App. No. 1691, unreported.
 {¶ 23} In the case at bar, we do not believe that appellant demonstrated that counsel rendered ineffective assistance. With respect to his first claim, that trial counsel was ineffective for failing to object to Detective Bowman's testimony that appellant refused to answer any questions regarding a weapon and then invoked his *Page 11 
right to counsel, [2] appellant cannot demonstrate either that counsel performed deficiently or that the allegedly deficient performance prejudiced his defense. First, counsel reasonably could have determined that objecting to the evidence could have further called the matter to the jury's attention, especially when no further mention was made of appellant's refusal to answer questions. More importantly, appellant cannot demonstrate prejudice. The evidence was overwhelming that appellant killed the victim and that he used a gun. Appellant did not dispute killing the victim with a gun, but only whether he acted in self-defense. Under these circumstances, counsel's failure to object did not prejudice the defense.
 {¶ 24} Additionally, appellant cannot demonstrate that counsel was ineffective for failing to request a voluntary manslaughter instruction. Counsel clearly stated on the record that the decision to forego a voluntary manslaughter instruction was a tactical decision designed to lead to either an acquittal or a guilty verdict on the murder charge. See State v. Bridgewater, Franklin App. No. 07AP-535, 2008-Ohio-466, at ¶ 33 (stating that courts should presume that defense counsel's decision to forego a voluntary manslaughter instruction is a tactical decision, especially when the defendant claims self-defense "`because an instruction on the lesser offense may confuse the jury with inconsistent theories of the defense and/or reduce the hope of attaining a complete acquittal'"). Appellant did not want the jury to consider a voluntary manslaughter charge. Because this was an obvious tactical decision, it cannot form the basis for an *Page 12 
ineffective assistance of counsel claim. See State v. Lee, Franklin App. No. 04AP234, 2004-Ohio-6834, at ¶ 22 (finding that "trial counsel's decision not to request a jury instruction on voluntary manslaughter could be considered a matter of trial strategy"); State v. Stokley (Jan. 16, 1997), Cuyahoga App. No. 70172 (stating that the decision to forego instructing the jury on the issue of voluntary manslaughter was a calculated attempt to gain acquittal).
 {¶ 25} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's second assignment of error.
 III {¶ 26} In his third assignment of error, appellant asserts that sufficient evidence does not support his conviction and that his conviction is against the manifest weight of the evidence. In particular, appellant claims that the record does not contain sufficient evidence to convict him of murder because the prosecution failed to present sufficient evidence that he purposely caused the victim's murder. Rather, he asserts that the evidence supports a conviction for voluntary manslaughter. Appellant also requests this court to reduce his conviction to voluntary manslaughter.
 {¶ 27} We first note that appellant's argument raises two fundamentally different issues. See State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541 (stating that the terms "sufficiency of the evidence" and "manifest weight of the evidence" are not synonymous legal concepts). "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." Id. at 386. Sufficiency is a test of the adequacy of the evidence, while "[w]eight of the evidence concerns `the inclination of the greater amount of credible *Page 13 
evidence, offered in a trial, to support one side of the issue rather than the other * * * *.'" Id. at 386, 387, quoting Black's Law Dictionary (6th Ed. 1990) 1433. Therefore, we address appellant's assignment of error as presenting two separate issues for our review: one concerning the sufficiency of evidence to sustain a conviction and the other concerning the manifest weight of the evidence.[3]
 {¶ 28} When reviewing the sufficiency of the evidence, our inquiry focuses primarily upon the adequacy of the evidence; that is, whether the evidence, if believed, reasonably could support a finding of guilt beyond a reasonable doubt. See State v. Thompkins (1997),78 Ohio St.3d 380, 386, 678 N.E.2d 541 (stating that "sufficiency is the test of adequacy"); State v. Jenks (1991), 61 Ohio St.3d 259, 273,574 N.E.2d 492. The standard of review is whether, after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; Jenks, 61 Ohio St.3d at 273. Furthermore, a reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence *Page 14 
against a defendant would support a conviction." Thompkins,78 Ohio St.3d at 390 (Cook, J., concurring).
 {¶ 29} When reviewing a sufficiency of the evidence claim, an appellate court must construe the evidence in a light most favorable to the prosecution. See State v. Hill (1996), 75 Ohio St.3d 195, 205,661 N.E.2d 1068; State v. Grant (1993), 67 Ohio St.3d 465, 477,620 N.E.2d 50. A reviewing court will not overturn a conviction on a sufficiency of the evidence claim unless reasonable minds could not reach the conclusion that the trier of fact did. See State v. Tibbetts (2001),92 Ohio St.3d 146, 749 N.E.2d 226; State v. Treesh (2001),90 Ohio St.3d 460, 739 N.E.2d 749.
 {¶ 30} Employing the above standard, we believe that in the case sub judice, the prosecution presented sufficient evidence from which a jury could conclude, beyond a reasonable doubt, that appellant committed murder. R.C. 2903.02 sets forth the offense of murder and provides: "No person shall purposely cause the death of another * * *." The prosecution presented sufficient evidence that appellant purposely caused the victim's death. All of the prosecution's witnesses testified that appellant shot the victim. Appellant did not deny that he shot the victim. Several witnesses testified that appellant's argument with the victim had ended and that appellant then went upstairs and retrieved a gun. A reasonable fact-finder could conclude that appellant acted with *Page 15 
purpose when he went upstairs, retrieved a gun, and returned to the kitchen where he shot the victim four times. The jury was entitled to disbelieve appellant's claims that he feared for his life. And, as we discussed under appellant's first assignment of error, insufficient evidence exists to demonstrate that appellant acted under a sudden fit of passion or rage when he shot the victim. Instead, appellant had sufficient cooling off time. Consequently, sufficient evidence supports appellant's murder conviction.
 {¶ 31} Appellant also asserts that his conviction is against the manifest weight of the evidence. "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. When an appellate court considers a claim that a conviction is against the manifest weight of the evidence, the court must dutifully examine the entire record, weigh the evidence, and consider the credibility of witnesses. The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. See State v. Issa (2001), 93 Ohio St.3d 49, 67,752 N.E.2d 904; State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Once the reviewing court finishes its examination, the court may reverse the judgment of conviction only if it appears that the fact-finder, in resolving conflicts in evidence, "`clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"Thompkins, 78 Ohio St.3d at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 32} If the prosecution presented substantial evidence upon which the trier of *Page 16 
fact reasonably could conclude, beyond a reasonable doubt, that the essential elements of the offense had been established, the judgment of conviction is not against the manifest weight of the evidence. SeeState v. Eley (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, syllabus. A reviewing court should find a conviction against the manifest weight of the evidence only in the "`exceptional case in which the evidence weighs heavily against conviction.'" Thompkins,78 Ohio St.3d at 387, quoting Martin, 20 Ohio App.3d at 175; see, also,State v. Lindsey (2000), 87 Ohio St.3d 479, 483, 721 N.E.2d 995.
 {¶ 33} In the case at bar, the evidence does not weigh heavily against conviction. Rather, the record contains ample competent and credible evidence that appellant purposely caused the victim's death. As we stated above, the fight had ended between appellant and the victim. Appellant was seated and then told the victim he had to use the restroom. Appellant went upstairs and retrieved the gun. These acts demonstrate purpose, not simply a reaction to the heat of the moment. Thus, we disagree with appellant that the evidence weighs against a murder conviction and in favor of a voluntary manslaughter conviction.
 {¶ 34} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's third assignment of error and affirm the trial court's judgment.
 JUDGMENT AFFIRMED. *Page 17 
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Harsha, J.: Not participating
McFarland, J.: Concurs in Judgment Opinion
[2] Detective Bowman stated that appellant "agreed to speak with us and was cooperative until we asked him about the weapon and its location. He then advised us he didn't want to answer any other questions and he wanted an attorney present."
[3] Although appellant's assignment of error raises both weight and sufficiency of the evidence claims, the substance of his argument raises only a sufficiency claim. Nevertheless, in the interests of justice we address both. *Page 1