[Cite as *State v. Smith* , 2011-Ohio-965.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
MEIGS COUNTY

STATE OF OHIO, : 
           :
    Plaintiff-Appellee, :   Case No. 09CA16
           :
    vs. :   **Released: February 24, 2011**
           :
JEANETTA A. SMITH, :   DECISION AND JUDGMENT
           :   ENTRY
    Defendant-Appellant. : 
_____

APPEARANCES:

Michael L. Barr, Little & Sheets LLP, Pomeroy, Ohio, for Defendant-Appellant.

Colleen S. Williams, Meigs County Prosecutor, and Matthew J. Donahue, Meigs County Assistant Prosecutor, Pomeroy, Ohio, for Plaintiff-Appellee.
_____

McFarland, J.:

{¶1}     Defendant-Appellant, Jeanetta Smith, appeals the decision of the Meigs County Court of Common Pleas.  For her involvement in the sexual abuse of her daughter, A.S., Smith was convicted of complicity to gross sexual imposition, complicity to sexual battery of a child under thirteen, and complicity to rape of a child.  Smith claims there was error in the court below in that: 1) her convictions were against the manifest weight of the evidence, and; 2) she was charged and convicted of both sexual battery and rape contrary to R.C. 1.51.  We find that neither of Smith's

assignments of error are warranted. There was substantial evidence for Smith's conviction, and the charges of sexual battery and rape were not allied offenses of similar import. As such, we overrule each of her assignments of error and affirm the trial court's decision.

## I. Facts

{¶2}     In 2008, Meigs County Children Services took custody of the three children of appellant Jeanetta Smith ("Smith") and her husband, Kenneth Michael Smith. The oldest of the children, A.S., was four at the time. After their removal from Jeanetta Smith's home, A.S. and her two younger siblings were placed in foster care. While in foster care, A.S. exhibited behavior typical of a child who had been sexually abused. Children Services began investigating the matter and interviewed Smith and her husband. Both initially denied any knowledge of, or involvement in, any abuse. But in a subsequent interview, Smith admitted that she had been involved in her husband's sexual abuse of A.S. Children Services alerted law enforcement and took Smith to the Meigs County Sherrif's Department, where Smith repeated her confession. Her confession at the Sherrif's Department was recorded in its entirety.

{¶3}     Smith was indicted on multiple counts and a jury trial was held in July 2009. During the trial, the jury heard testimony from multiple

witnesses, including Children Services case workers, medical personnel who had examined A.S., and Smith herself, who testified in her own defense. Smith's recorded confession was also played for the jury. Smith testified that she had not abused A.S., and that she had given a false confession only because she was being denied visitation. She testified that she believed if she told Children Services personnel what they wanted to hear, she would be allowed to see A.S. again.

{¶4} The jury found Smith guilty of complicity to: gross sexual imposition, under R.C. 2907.05(A)(4); sexual battery of a child under thirteen, under R.C. 2907.03(A)(5) and (B); and rape of a child under thirteen, under 2907.02(A)(1)(b). The trial court sentenced her to five years for gross sexual imposition, to a mandatory eight years for sexual battery, and to life imprisonment, with the possibility of parole after fifteen years, for the rape charge – all sentences to run consecutively, for a total of life imprisonment, with the possibility of parole after twenty-eight years. Following sentencing, Smith timely filed the current appeal.

## II. Assignments of Error

First Assignment of Error

> DEFENDANT-APPELLANT JEANETTA SMITH'S
> CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF
> THE EVIDENCE.

Second Assignment of Error

> THE TRIAL COURT COMMITTED PLAIN ERROR IN NOT GRANTING DEFENDANT-APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL PURSUANT TO CRIM.R. 29 AND ORC 1.51.

Third Assignment of Error

> THE TRIAL COURT COMMITTED PLAIN ERROR IN SENTENCING IN CONTRADICTION OF ORC 1.51.

### III. First Assignment of Error

{¶5}     In her first assignment of error, Smith argues that the jury's verdict was against the manifest weight of the evidence.  "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.  Sufficiency tests the adequacy of the evidence, while weight tests "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other[.]" *State v. Sudderth*, 4th Dist. No. 07CA38, 2008-Ohio-5115, at ¶27, quoting *Thompkins* at 387.

{¶6}     "Even when sufficient evidence supports a verdict, we may conclude that the verdict is against the manifest weight of the evidence, because the test under the manifest weight standard is much broader than that for sufficiency of the evidence." *State v. Smith*, 4th Dist. No. 06CA7, 2007-Ohio-502 at ¶41.  When determining whether a criminal conviction is

against the manifest weight of the evidence, we "will not reverse a conviction where there is substantial evidence upon which the [trier of fact] could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eskridge* (1988), 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus. See, also, *Smith* at ¶41. We "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial granted." *Smith* at ¶41, citing *State v. Garrow* (1995), 103 Ohio App.3d 368, 370-371, 659 N.E.2d 814; *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. However, "[o]n the trial of a case, * * * the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967) 10 Ohio St.2d 230, 227 N.E.2d 212.

{¶7} During trial, the jury first heard the testimony of Linda Higgins, A.S.'s foster mother who initially raised concerns regarding sexual abuse. Higgins, who had training in identifying indicators of sexual abuse, saw such behavior in A.S. when A.S. and her two younger siblings were placed in her care. A.S. had rage issues and exhibited sexualized behavior,

such as simulating sexual acts, both by herself and with her two-year-old brother, and attempting to insert objects into herself. As a result of Higgin's observations, Children Services opened an investigation regarding the possible abuse of A.S.

{¶8}    The jury also heard the testimony of Dr. Phillip Scribano, the Director of the Child Advocacy Center, who examined A.S. at the request of Children Services. Scribano testified that the behaviors exhibited by A.S. were not typical of a four-year-old. He further stated that such behavior was indicative of direct experience with, or exposure to, sexual activity. Scribano testified that, given the severity of A.S.'s sexualized behaviors and other factors, he believed that she had been sexually abused.

{¶9}    The jury also heard the testimony of Candace Walker and Emily Bass, employees of Children Services. They observed A.S.'s sexualized behavior, including pulling her younger brother on top of her self, moving her hips back and forth and making moaning noises. They tried to interview A.S. regarding the possible abuse, but A.S's ability to communicate verbally was extremely limited.

{¶10}   When Children Services initially interviewed Smith and her husband together, both denied knowledge of any abuse. But Walker subsequently spoke with Smith's husband alone. And as a result of

information she learned during that conversation, she asked Smith to come and speak with her once more. In that second interview, which took place at Children Services, Walker and Bass told Smith that they had information regarding her involvement in the abuse of A.S. Walker and Bass testified that at that point, Smith admitted her involvement and detailed the abuse.

{¶11} Most importantly, the jury heard Smith's recorded confession. Immediately after her second interview at Children Services, Smith agreed to accompany Walker and Bass to the sheriff's office. There, she again admitted to the abuse. This second confession was recorded, with Smith's full knowledge. From that recording, the jury heard Smith, in her own voice, detail the extremely disturbing sexual abuse, including that: Smith and A.S. would masturbate together on the bed; Smith's husband would perform oral sex on A.S. while Smith performed oral sex on her husband; Smith and A.S. would both perform oral sex on her husband at the same time, and; her husband, while having sex with Smith, would insert his finger into A.S. Though, in her confession, Smith claimed she would not directly touch A.S. during these encounters, she admitted that she encouraged A.S. to participate, and do what she was doing. She also admitted that she enjoyed these encounters. Finally, she admitted that, at the time the abuse was occurring, she knew it was both wrong and illegal.

{¶12}   During trial, Smith took the stand in her own defense.  She testified that the statements she made in her confession were not true.  Smith claimed that Walker and Bass coerced her confession by yelling at her, and by telling her that she would be allowed to visit her children if she confessed.  "I basically told them what they wanted to hear because I thought I was going to be able to see my kids."  Walker and Bass both explicitly denied this allegation, testifying that Smith was not promised anything in exchange for her confession.  Further rebutting Smith's allegation that her testimony was coerced is the fact that she voluntarily accompanied Walker and Bass to the sheriff's office to make her confession.  She admitted that, at that time, she was not placed in restraints, she was not placed under arrest or taken into custody, and she was told that she could leave any time she liked.

{¶13}   After a complete examination of the record, we find there was substantial evidence for the jury's decision and that the jury could have reasonably concluded that all the elements of complicity to gross sexual imposition, sexual battery, and rape were proven beyond a reasonable doubt. The testimony of A.S.'s foster mother, medical professionals, and employees of Children Services clearly established that A.S. was sexually abused.

Further, Smith's confession clearly establishes that she and her husband were responsible for that abuse.

{¶14}   Regarding the factual circumstances surrounding her confession, the jury heard both Smith's version of events and law enforcement and Children Services' version.  To the extent that Smith's testimony differed from other witnesses as to whether or not her confession was voluntary, such determinations of credibility are for the trier of fact.  As such, it was the jury's role, not the role of this reviewing court, to resolve issues involving conflicting testimony.  Thus, we find the State presented substantial evidence for Smith's conviction and we overrule her first assignment of error.

IV. Second and Third Assignments of Error

{¶15}   Smith's second and third assignments of error are based on the same argument, and we consider them together.  Smith contends that it was error to indict and convict her for both sexual battery of a child under thirteen, under R.C. 2907.03(A)(5) and (B) and rape of a child under thirteen, under 2907.02(A)(1)(b).  Smith asserts that the rape charge is a general statutory provision and the sexual battery charge is a specific statutory provision.  And under R.C. 1.51, when a general provision and a special provision conflict, the special provision prevails.  Accordingly,

Smith contends that she could properly have been charged and sentenced only for sexual battery, not for rape. For the following reasons, we disagree.

{¶16}   The Supreme Court of Ohio has stated that "R.C. 1.51 comes into play only when a general and a special provision constitute allied offenses of similar import and additionally do not constitute crimes committed separately or with a separate animus for each crime." *State v. Chippendale* (1990), 52 Ohio St.3d 118, 120, 556 N.E.2d 1134. Accordingly, when the offenses in question are not allied offenses of similar import, R.C. 1.51 does not preclude the offender from being charged with and convicted of both. See, e.g., *State v. Eppinger*, 162 Ohio App.3d 795, 835 N.E.2d 746, 2005-Ohio-4155 at ¶14.

{¶17}   In *State v. Blankenship* (1988), 38 Ohio St.3d 116, 526 N.E.2d 816, the Supreme Court of Ohio established a two-part test to determine whether two offenses are allied offenses of similar import. The Court further refined its analysis in numerous subsequent cases, culminating in *State v. Johnson*, --- N.E.2d ----, 2010 WL 5392806 (Ohio), 2010-Ohio-6314. There, the court stated the following:

{¶18}   "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct, not

whether it is possible to commit one without committing the other. * * * If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." Id. at ¶48.

{¶19}   "If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" Id. at ¶49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶50 (Lanzinger, J., dissenting). "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." Id. at ¶50.

{¶20}   In the case sub judice, Smith argues that the commission of sexual battery on a child under thirteen, under R.C. 2907.03(A)(5) and (B) necessarily results in the commission of rape of a child under thirteen, under 2907.02(A)(1)(b). And, thus, they are allied offenses of similar import. However, even if Smith is correct, and the commission of one necessarily results in the commission of the other, we find that she can be convicted of both because the crimes were committed separately.

{¶21}   Under the second part of the *Johnson* analysis, a defendant may be convicted of both offenses if  the offenses were committed

separately or there was a separate animus for each. During trial, the evidence showed that A.S. had been sexually abused in a number of ways. In Smith's confession, she admitted that, among other abuses, she encouraged A.S. to perform oral sex on her husband, her husband performed oral sex on A.S., and her husband digitally penetrated A.S. The Supreme Court of Ohio has stated that such separate acts constitute separate crimes even when taking place during the same event. In *State v. Nicholas* (1993), 66 Ohio St.3d 431, 613 N.E.2d 225, the Court found that vaginal intercourse, cunnilingus, and digital penetration constituted separate acts. "Since each constitutes a separate crime with a separate animus, they do not constitute allied offenses of similar import." *Nicholas* at 435.

{¶22}   We find *Nicholas* to be controlling in the case sub judice. Even if, in these circumstances, Smith's complicity to sexual battery necessarily resulted in complicity to rape, the sexual abuse consisted of various sexual acts. Accordingly, separate crimes were committed for which Smith could be charged separately. As such, we overrule her second and third assignments of error.

## V. Conclusion

{¶23}   After a complete review of the record below, we find there was substantial evidence for Smith's conviction. Accordingly, her argument

that the jury's decision was against the manifest weight of the evidence has no merit.  Similarly, because her complicity to the sexual abuse of A.S. constituted separate crimes and not a single act, her offenses of complicity to sexual battery and complicity to rape were not allied offenses of similar import.  As such, we also overrule her second and third assignments of error and affirm the decision of the court below.

**JUDGMENT AFFIRMED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Meigs County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, J. and Kline, J.: Concur in Judgment and Opinion.

For the Court,

BY: _____
Matthew W. McFarland, Judge

**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**